**McDONNELL DOUGLAS CORPORATION,**
Plaintiff,

v.

**NATIONAL AERONAUTICS & SPACE ADMINISTRATION, Defendant.**

Civ. A. No. 91–3134 (RCL).

United States District Court,
District of Columbia.

June 30, 1995.

Peter J. Wellington, Jerald S. Howe, Henry E. Hockeimer, Jr., Steptoe & Johnson, Washington, DC, for plaintiff.

Eric H. Holder, Jr., U.S. Atty., John D. Bates, Michael J. Ryan, Asst. U.S. Attys., Washington, DC, for defendant.

*DETERMINATION ON REMAND*

LAMBERTH, District Judge.

This matter comes before the Court on remand from the United States Court of Appeals for the District of Columbia Circuit for further consideration in light of that Court's opinion in *Critical Mass Energy Pro-*

*ject v. Nuclear Regulatory Commission,* 975 F.2d 871 (D.C.Cir.1992) (en banc). Also before the Court is defendant National Aeronautics & Space Administration's motion to remand to the agency for consideration of changed conditions, and plaintiff McDonnell Douglas Aerospace's second motion for summary judgment.

Prior to appeal this court permanently enjoined defendant National Aeronautics & Space Administration ("NASA") from disclosing, pursuant to a Freedom of Information Act ("FOIA") request, information in a contract between NASA and McDonnell Douglas Aerospace ("MDA"). The contract between the two parties covered Delta II rockets and related launch services, while the injunction covered only specific line item prices ("CLINs") within the contract. This court orally ruled from the bench on January 24, 1992, that NASA's decision to release the CLINs was arbitrary and capricious because the information came within exemption four of FOIA, 5 U.S.C. § 552(b)(4) (exempting "trade secrets and commercial or financial information obtained from a person and privileged or confidential"), as that exemption was construed in *National Parks and Conservation Association v. Morton,* 498 F.2d 765 (D.C.Cir.1974).

■ *National Parks* established a two-part test to determine when financial or commercial information in the government's possession is confidential under exemption four of FOIA. Commercial or financial information is confidential under *National Parks* if its disclosure is likely to (1) impair the government's ability to obtain necessary information in the future, or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. *Id.* at 770. In the present case, the court found that the administrative record compiled by NASA supported MDA's claim of substantial competitive harm. The court granted plaintiff's motion for summary judgment and entered a permanent injunction forbidding NASA from releasing the disputed CLINs.

NASA appealed this decision, and during the pendency of NASA's appeal the D.C. Circuit created a new test for certain FOIA exemption four cases in *Critical Mass,* 975 F.2d at 879. *Critical Mass* held that financial or commercial information provided to the government on a *voluntary* basis is "confidential" for the purposes of FOIA exemption four if it is of a kind that would customarily not be released to the public by the person from whom it was obtained. *Id. Critical Mass* limited the scope of *National Parks* to exemption four cases where the information sought under FOIA was *required* by the government.

The first issue before the court is whether the exemption four analysis previously applied in this case under *National Parks* is altered by the Circuit Court's holding in *Critical Mass.*

In *Critical Mass* a public interest organization made a FOIA request to obtain reports voluntarily provided to the Nuclear Regulatory Commission (NRC) by a private nuclear industry group. *Id.* at 874. The private reports included candid comments and evaluations from nuclear power plant employees, and were provided to the NRC on a purely voluntary basis with the understanding they were not to be disclosed without the group's consent. The Court of Appeals concluded that because the sensitive reports were (1) voluntarily submitted to the NRC by private entities and (2) candid assessments not customarily released to the public, they qualified as exempt from disclosure under FOIA exemption four.

Borrowing from its earlier observations in *National Parks,* the court in *Critical Mass* emphasized its concern for "encouraging cooperation with the Government by persons having information useful to officials". *Id.* at 878. The court stressed the government's interest in ensuring the "continued availability" of information that is volunteered, and the desire to avoid hindering "the ability of the Government to make intelligent, well informed decisions". *Id.*

■ The threshold inquiry to determine if *Critical Mass* or *National Parks* is applicable to a FOIA exemption four case is whether the information sought by the requesting party was provided to the government voluntarily. Although no bright line rule exists

for determining voluntariness, examination of the *Critical Mass* opinion sheds light on the type of information the D.C. Circuit Court contemplated as being voluntary. Upon careful examination of *Critical Mass,* the court concludes that as a matter of law the price elements necessary to win a government contract are not voluntary.

The crux of the issue is whether the information requested under FOIA—namely, price elements of a contract—was *required* by the government. Plaintiff contends that MDA's submission of a proposal for, and its entry into, the Delta II contract were obviously voluntary acts. The plaintiff's argument, however, is inapposite. The issue is not whether MDA was required to contract with NASA—no one disputes that the process of offer and acceptance giving rise to contractual obligations is voluntary. The focal point here is the information itself, and NASA required that the contract itemize the prices for specific services. Not only is it clear in this case that the prices in the contract were essential and required, but precedent from other judges of this court supports the conclusion that pricing information necessary for a government contract is considered involuntary for a FOIA exemption four analysis.

In *Chemical Waste Management, Inc. v. O'Leary,* No. 94–2230, 1995 WL 115894 (D.D.C. Feb. 28, 1995), Judge Johnson, applying a *Critical Mass* analysis, upheld an agency decision that unit price information in a government subcontract was not voluntary. In holding that unit price information was involuntary, Judge Johnson concurred that the bid "would not have won plaintiff the subcontract" without the prices, and that the offeror "had no choice but to submit the unit price information once it chose to submit its proposal". *Id.* at 8. Like the plaintiff in *Chemical Waste,* MDA was required to tell the government what it was going to charge for various goods and services if it was going to be awarded the government contract.

Additionally, none of the prevalent policy concerns addressed by the court in *Critical Mass* are present in this case. Unlike the NRC in *Critical Mass,* NASA does not need to "encourage cooperation" to receive the information at issue. MDA is not doing the government a favor by providing the most basic information in a contract—price. Nor is there a concern in this case of ensuring the "continued availability" of the type of information at issue. The launch industry is a multi-million dollar market, and if the contractors want to win lucrative government contracts they must provide NASA with specific pricing elements for their goods and services.

Plaintiff also attempts to gain support from this court's memorandum opinion in *McDonnell Douglas Corp. v. NASA,* No. 93–1540 (RCL), 1993 WL 796612 (D.D.C. Nov. 17, 1993) ("*McDonnell II* "). In that case, a FOIA request was made for the comments submitted by MDA to justify nondisclosure of the CLINs at issue in this case. In *McDonnell II,* however, different information was at issue, and it was clear that the comments from MDA were voluntarily submitted to NASA. Furthermore, the type of voluntary information in *McDonnell II* was exactly the type of information that the court in *Critical Mass* contemplated as being protected from disclosure by FOIA exemption four. MDA submitted explanations to help NASA make the right decision regarding disclosure of the information at issue. NASA did not require McDonnell Douglas to provide comments, nor did the agency specifically require certain information to be included in the voluntary comments.

NASA contends that there is not enough information in the record relating to the contractual process between NASA and MDA for the court to determine if the price elements at issue were voluntary. But the contractual process for achieving the final prices is not at issue. How the final prices for the contract were arrived at, whether from a firm offer or a process of negotiation, is inconsequential for this analysis. Price is an essential and required piece of information for the contract, no matter how it was achieved.

The second issue the court must resolve is whether this case should be remanded to the agency pursuant to NASA's motion for consideration of changed conditions. NASA argues that it should have the first opportunity

to decide if the information sought under FOIA could be protected under the new rule announced in *Critical Mass,* and that it should be permitted to create a fresh record reflecting the current law and circumstances. NASA also argues that a remand to the agency is appropriate in order to remedy inadequacies identified by this Court in the administrative record.

 The court is well aware that when faced with a matter an agency has not yet evaluated, it is appropriate to remand the matter to the agency for review. *Florida Power and Light Company v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). In the present case, however, it is unnecessary to remand to the agency. *National Parks* still provides the appropriate legal standard, negating the agency's perceived need to reflect on new law. There is also no need for agency expertise or experience to make the legal conclusion that *National Parks* and not *Critical Mass* controls in this case.

 Nor is remand to the agency necessary to remedy what NASA characterizes as inadequacies in the record and procedural deficiencies. Under the judicial review provisions of the Administrative Procedure Act it is a court's duty to "hold unlawful and set aside agency action, findings, and conclusions" that it determines to be arbitrary and capricious. 5 U.S.C. § 706. NASA's decision that exemption four did not apply to the CLINs at issue was reversed because it was arbitrary and capricious. The record was inadequate to support NASA's erroneous decision, which is different from being inadequate to support any decision or from suffering a procedural deficiency that might necessitate remand to the agency. NASA is not entitled to a second bite of the apple just because it made a poor decision—if that were the case, administrative law would be a never ending loop from which aggrieved parties would never receive justice.

The last issue before the court is whether to grant plaintiff's second motion for summary judgment. Since the Circuit Court's opinion in *Critical Mass* does not alter the earlier holding of this court, and remand to the agency is inappropriate, there is no need to address McDonnell Douglas's second motion for summary judgment. The present permanent injunction, granted along with plaintiff's original motion for summary judgment, remains in place.

Accordingly, the court's order of January 24, 1992, enjoining NASA from releasing the contract line item prices contained in Section B.2 of Contract NAS5–30722, the Delta II contract, shall REMAIN IN EFFECT.

SO ORDERED.