**MARTIN MARIETTA CORPORATION,**
**Plaintiff,**

v.

**John H. DALTON, et. al., Defendants.**

**Civil Action No. 94–2702 (TPJ).**

United States District Court,
District of Columbia.

Aug. 8, 1997.

Robert W. Ogren, Piper & Marbury, L.L.P., Washington, DC, for Plaintiff.

Cynthia Ann Schnedar, U.S. Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

JACKSON, District Judge.

In this "reverse-FOIA" case plaintiff Martin Marietta Corporation ("Martin Marietta") seeks to prevent disclosure of certain information contained in five contracts between its predecessor, General Electric Aerospace (with whom Martin Marietta has merged),[1] and the Department of the Navy's Naval Air Systems Command ("NAVAIR"). Several of plaintiff's competitors have requested the information pursuant to the Freedom of Information Act, 5 U.S.C. 552 *et seq.* ("FOIA"). Martin Marietta contends that the information is exempted from disclosure by § 552(b)(4) of FOIA ("Exemption 4"), and is protected as well by the Trade Secrets Act, 18 U.S.C. § 1905. NAVAIR disagrees, and has declared its intention to comply with the FOIA requests unless this Court should conclude that to do so would be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1977). The case is presently before the Court on cross-motions for summary judgment.

### I.

■ Exemption 4 of FOIA excludes from the statute's mandatory disclosure requirements "trade secrets and commercial and financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The Trade Secrets Act, 18 U.S.C. § 1509, prohibits the government's discretionary disclosure of information in its possession "not [otherwise] authorized by law," i.e., FOIA.[2]

All of the contracts at issue between Martin Marietta and NAVAIR relate to the Navy's Consolidated Automated Support System program ("CASS"), which was designed to provide computer-assisted test equipment for various computer systems in

Navy aircraft. Martin Marietta's competitors for other NAVAIR contracts, including but not limited to Gruman Electrical Systems, Harris Corp., and Hughes Aircraft, filed the FOIA requests seeking copies of the contracts. Martin Marietta has acceded to the release of much of the requested information but seeks to prevent NAVAIR from disclosing three categories of what it contends is confidential and proprietary information incorporated in the General Electric Aerospace–NAVAIR contracts that it describes as follows: (1) cost and fee information, including material, labor and overhead costs, as well as target costs, target profits and fixed fees; (2) component and configuration prices, including unit pricing and contract line item numbers ("CLINS"); and (3) technical and management information, including subcontracting plans, asset allocation charts, and statements of the work necessary to accomplish certain system conversions.

Two D.C. Circuit precedents, *National Parks and Conservation Association v. Morton,* 498 F.2d 765 (D.C.Cir.1974) (*"National Parks"*) and *Critical Mass Energy Project v. Nuclear Regulatory Commission,* 975 F.2d 871 (D.C.Cir.1992) (*en banc*), *cert. denied,* 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993) (*"Critical Mass"*), establish two different legal tests to govern Exemption 4 cases, the choice of which test to apply depending on the circumstances of the government's acquisition of the information at issue. *National Parks* held that if commercial or financial information submitted to the government is legally *required* of the party submitting it, then, in response to a FOIA request, the government is obliged to treat commercial or financial information as "confidential" for the purposes of Exemption 4, and should not reveal it if its disclosure would be likely (1) to impair the government's ability to obtain such information in the future, or (2) to cause substantial harm to the competitive position of the submitting source. *See National Parks,* 498 F.2d at

---

1. Lockheed–Martin Corporation acquired the stock of Martin Marietta subsequent to the filing of this lawsuit.

2. The scope of the Trade Secrets Act is deemed to be co-extensive with Exemption 4 of FOIA. *CNA Financial Corp. v. Donovan,* 830 F.2d 1132, 1151 (D.C.Cir.1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988).

770. NAVAIR argues that the *National Parks* test applies.

Martin Marietta asserts that this case is governed by *Critical Mass,* not *National Parks.* In *Critical Mass,* the court of appeals held that, when the submission of financial or commercial information to the government is *voluntary,* the information is "confidential" within the meaning of Exemption 4 and should not be disclosed if the information "would customarily not be released to the public by the person from whom it was obtained." *Critical Mass,* 975 F.2d at 878 (citation omitted). The information contained in General Electric Aerospace's contracts with NAVAIR was voluntarily submitted in support of its bids, says Martin Marietta, and is clearly not the type of information that it would release to the public on its own, much less to its competition.

Although the D.C. Circuit has yet to address the issue, district court precedent in this Circuit uniformly and firmly points to the conclusion that the financial/commercial information found in the Martin Marietta–NAVAIR CASS contracts was "required" in the *National Parks* sense of the term by Federal Acquisition Regulations, 48 C.F.R. §§ 15.402, 15.804–6(b)(requiring bidders to include cost and pricing information), and therefore subject to the *National Parks* test. See *McDonnell Douglas Corp. v. National Aeronautics & Space Admin.,* 895 F.Supp. 319, 326 (D.D.C.1995) (pricing information submitted in response to NASA's Request for Proposals ("RFP") in a competitive bidding situation was "required" and mandatory; its omission would result in the disqualification of the bidder from the competition). *See also Lykes Bros. Steamship Co., Inc. v. Pena,* No. 92–2780, 1993 WL 786964, *7 (D.D.C. Sept.2, 1993); *Chemical Waste Management, Inc. v. O'Leary,* No. 94–2230, 1995 WL 115894, *8 (D.D.C. Feb.28, 1995) (bid "would not have won plaintiff the subcontract" without the pricing data. Plaintiff "had no choice but to submit the unit price

information once it chose to submit its proposal."). *Cf. Public Citizen Health Research Group v. Food and Drug Admin.,* 964 F.Supp. 413, 414 n. 1 (D.D.C.1997) (drug manufacturer's submission of protocol for post-marketing study of drug was necessary in order to obtain FDA approval to market, and therefore "required" under *National Parks* analysis).

Martin Marietta's predecessor, General Electric Aerospace, confronted the same choice as the plaintiffs in the above cases when it bid on the NAVAIR RFPs. Whether to compete for NAVAIR's business at all was, of course, its option, but having elected to do so it was required to submit the information NAVAIR insisted on having if it hoped to win the contract. "A proposal received in response to an RFP is an offer that can be accepted by the Government to create a binding contract ..." 48 C.F.R. § 15.402(d). Moreover, General Electric Aerospace's bids were submitted on SF 1411 forms, and Federal Acquisition Regulations also specify that "[t]he SF 1411 shall not be used unless cost or pricing data are required to be submitted." 48 C.F.R. § 15.804–6(b)(1). The regulations are replete with words of command like "shall" and "must," as the court noted in *McDonnell Douglas, supra. See* 395 F.Supp. at 326. General Electric Aerospace's submission of the contract information in question was not the "voluntary" act contemplated by *Critical Mass.*[3]

## II.

■■ As noted above, under *National Parks* the specifics of General Electric Aerospace's contract bids, once acquired by NAVAIR, should be deemed confidential for purposes of Exemption 4 only if NAVAIR were to find either that a disclosure would be likely to (1) impair its ability to obtain such information in the future, or (2) cause substantial harm to the bidder's competitive position. 498 F.2d at 770. FOIA commits both determinations to NAVAIR's discretion.

---

**3.** *Critical Mass* arose over the accessibility to the public of a reports prepared by a private industry group for its own purposes but shared with the Nuclear Regulatory Commission upon its request (and a promise of confidentiality) for them. The

information at issue in *National Parks* was data submitted to the Department of the Interior by concessionaires doing business in national parks as a condition of their licenses.

*Acumenics Research & Technology v. United States Dep't of Justice,* 843 F.2d 800, 803–05 (4th Cir.1988); *Pacific Architects & Engineers, Inc. v. United States Dep't of State,* 906 F.2d 1345, 1347 (9th Cir.1990).

It is highly unlikely that NAVAIR's ability to obtain such information in the future would be impaired in the least if it releases the contracts, and Martin Marietta does not argue that it will. Government contractors, including Martin Marietta, will continue bidding for NAVAIR contracts despite the risk of revealing business secrets if the price is right. Martin Marietta claims, however, that release of the contracts will cause it substantial competitive harm.

The first two categories of information with which Martin Marietta is concerned are its cost-and-fee and CLINS information. It contends that possession of such data would enable Martin Marietta's competitors to predict its costs and profit margin, significantly enhancing their ability to underbid. *See* Administrative Record ("AR") at Tabs 8, 13, 20, 25, 32–40. The remaining category is basically technical and management information. This material should be confidential, in Martin Marietta's estimation, because it tends to reveal the company's proprietary internal corporate policies. AR at Tab 32. If disclosed to its competitors, they would gain significant insight into its "internal operations, its winning subcontracting strategies, [and] its overall approach to overhead costs." *Id.* Competitors might also be able to "reverse-engineer" its products. *Id.* at 34.

### III.

■ NAVAIR supports its decision to release the contracts *in toto* over Martin Marietta's objection on two grounds. First, having earlier released two of its contracts without General Electric Aerospace's knowledge or consent, including some of the data at issue here, NAVAIR argues that it is now in the public domain and no longer entitled to confidential treatment if it ever were. The Court rejects that proposition. The pri-

or release of information to a limited number of requesters does not necessarily make the information a matter of common public knowledge, nor does it lessen the likelihood that Martin Marietta might suffer competitive harm if it is disclosed again, this time at the behest of acknowledged commercial adversaries. *Cf. U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 762–71, 109 S.Ct. 1468, 1476–81, 103 L.Ed.2d 774 (1989) (federal compilation of facts from diverse public sources nevertheless entitled to FOIA exemption from dissemination if further invasion of privacy might ensue).

NAVAIR's second ground is both more substantive and more substantial. The basic policy of FOIA is one of disclosure. *U.S. Dept. of Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976). FOIA is to be construed broadly and in favor of disclosure; statutory exemptions are correlatively given a narrow construction. *Id.* at 361–62, 96 S.Ct. at 1599–1600. Information in the government's possession when requested by anyone for any reason is presumptively producible unless it is clearly exempt. *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 220–21, 98 S.Ct. 2311, 2316–17, 57 L.Ed.2d 159. Given that premise, says NAVAIR, Martin Marietta has simply failed to demonstrate "with sufficient specificity" precisely how it will suffer substantial harm if the General Electric Aerospace contracts are opened to public scrutiny. AR at Tab 44.[4]

Moreover, the disclosure contemplated as the chief virtue of FOIA is not merely to make accessible just any information in the government's possession, but in particular to expose information which would "open agency action to the light of public scrutiny." *U.S. Dep't of Air Force v. Rose,* 425 U.S. at 372, 96 S.Ct. at 1604. "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose." *U.S. Dep't of Jus-*

---

4. When the government on its own refuses a FOIA request, it bears the burden of justifying non-disclosure. 5 U.S.C. § 552(a)(4)(B). In "reverse-FOIA" cases, the party seeking to prevent a disclosure the government itself is otherwise willing to make assumes that burden. *See Pacific Architects & Engineers v. United States Dep't of State,* 906 F.2d 1345, 1347 (9th Cir.1990).

*tice v. Reporters Committee,* 489 U.S. at 773, 109 S.Ct. at 1481–82.

In perhaps no sphere of governmental activity would that purpose appear to be more important than in the matter of government contracting. The public, including competitors who lost the business to the winning bidder, is entitled to know just how and why a government agency decided to spend public funds as it did; to be assured that the competition was fair; and, indeed, even to learn how to be more effective competitors in the future.

In the instant case NAVAIR concluded that neither the revelation of cost and pricing data nor proprietary management strategies were likely to result in such egregious injury to Martin Marietta as to disable it as an effective competitor for NAVAIR's business in the future. The Court cannot find that conclusion, and NAVAIR's decision to release the contracts, to be arbitrary or capricious, or an abuse of its discretion. Martin Marietta might prefer that less be known about its operations, and that the reasons for its past successes remain a mystery to be solved by the competitors on their own. But it has not shown NAVAIR or this Court, on the basis of this record, that it will in fact be unable to duplicate those successes unless NAVAIR acquiesces in keeping the competition in the dark.

For the reasons set forth above, it is, this 8th day of August, 1997,

ORDERED, that this case is unsealed; and it is

FURTHER ORDERED, that defendants' motion for summary judgment is granted; and it is

FURTHER ORDERED, that plaintiff's cross-motion for summary judgment is denied; and it is

FURTHER ORDERED, that the Clerk is directed to enter judgment in favor of defendants and against plaintiff; and it is

FURTHER ORDERED, that this action is dismissed with prejudice.