**McDONNELL DOUGLAS CORPORATION,**
Plaintiff,

v.

**NATIONAL AERONAUTICS & SPACE ADMINISTRATION, Defendant.**

**Civil Action No. 96–2611(RCL).**

United States District Court,
District of Columbia.

Oct. 14, 1997.

---

Peter L. Wellington, Jerald S. Howe, Jr., Cynthia L. Taub, Steptoe & Johnson, Washington, DC, for Plaintiff.

Michael Joseph Ryan, Asst. U.S. Atty., Washington, DC, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on cross-motions for summary judgment and the parties' motions to supplement the certified administrative record.

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This case is proper for summary judgment as it does not present any disputed issues of material fact. The court grants both parties' motions to supplement the certified administrative record. For the reasons set forth below the court grants the defendant's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment.

### I. Background

In December of 1994, defendant National Aeronautics & Space Administration ("NASA") issued a solicitation for bids relating to NASA's need for Medium Light Expendable Launch Vehicle Services ("Med–Lite"). The solicitation requested the submission of proposed prices for a number of contract line items ("CLINs"), including launch mission prices for several planned missions during 1998 and 1999. The plaintiff, McDonnell Douglas Aerospace ("MDA") responded with an offer based on use of the Delta launch vehicle. On February 27, 1996, the plaintiff and defendant executed a final Med–Lite contract. The contract incorporated final prices submitted by the plaintiff for the launch missions. It also included additional information, including CLINs for the launch missions. Shortly after August 25, 1996, NASA received a Freedom of Informa-

tion Act ("FOIA") request for the Med–Lite contract. NASA requested comments from MDA with regard to the FOIA request and received these comments on September 23–24, 1996. After reviewing MDA's comments, NASA issued a "Notice of Intent to Release Information" letter on November 8, 1996. On November 16, 1996, MDA responded to NASA's "Notice of Intent to Release Information" letter. MDA further explained its previous objections, asserted new objections to the specific information which NASA indicated that it intended to release, and requested NASA' reconsideration of the issue. On November 18, 1996, McDonnell Douglas filed the present suit under the Administrative Procedure Act ("APA"), claiming that NASA's decision to release various prices, incentive amounts, and billing arrangements relating to the Med–Lite contract was arbitrary and capricious. MDA claims that the information at issue is protected from disclosure by exemption four of FOIA. Exemption four of FOIA excludes from disclosure "trade secrets and commercial or financial information obtained from a person [which are] privileged or confidential."[1] 5 U.S.C. § 552(b)(4).

## II. Analysis

■ The court must first consider MDA's motion for leave to file a supplement to the administrative record. MDA claims that the certified administrative record in this case is incomplete and seeks to add its letter faxed to NASA on November 16, 1996 and NASA's letter of response dated December 19, 1996. NASA contends that MDA's attempt to supplement the administrative record is improper or in the alternative that the court should also add NASA's November 20, 1996 letter to the record. After considering the parties' various contentions, the court finds that all three documents should be included in the record. NASA's lengthy response to MDA's November 16, 1996 submission indicates that NASA carefully considered MDA's additional comments. Hence, MDA is not seeking to add documents to the record upon review

that were not considered by the agency. *See IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C.Cir. 1997) (refusing to consider affidavits submitted by the plaintiff that were not before the administrative agency at the time it made its decision). It is a widely accepted principle of administrative law that courts should base their review of an agency's actions on the materials that were before the agency at the time its decision was made. *Id.* (citations omitted).

■ Next, this court must address the parties' cross-motions for summary judgment. In a "reverse FOIA" case such as this, where an agency wants to release information but the submitter of that information objects, this court may only set aside the agency's decision if the court finds the decision to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 337 (D.C.Cir.1989). This deferential standard of review only requires that a court examine whether the agency's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

MDA contends that the legal test created by the D.C. Circuit in *Critical Mass Energy Project v. Nuclear Regulatory Commission*, 975 F.2d 871 (D.C.Cir.1992) (en banc) rather than its earlier test in *National Parks and Conservation Association v. Morton*, 498 F.2d 765 (D.C.Cir.1974) governs the application of exemption four in this case. MDA contends that *Critical Mass* applies to the information at issue because it voluntarily decided whether to pursue the Med–Lite contract. However, "the issue is not whether MDA was required to contract with NASA— no one disputes that the process of offer and acceptance giving rise to contractual obligations is voluntary." *McDonnell Douglas Corporation v. National Aeronautics &*

---

1. McDonnell Douglas also claims that the Trade Secrets Act, 18 U.S.C. § 1905, prohibits the release of the pricing information. The D.C. Circuit recognizes the scope of the Trade Secrets

Act to be co-extensive with exemption four of FOIA. *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C.Cir.1987).

*Space Administration,* 895 F.Supp. 316, 318 (D.D.C.1995) (*"McDonnell I"*) (Lamberth, J.). Rather, the relevant inquiry is whether the specific price elements and other information provided by MDA were required to be submitted before NASA would award the contract. *Id.* Upon review of the record in this case and the submissions of the parties, the court holds that NASA did not act arbitrarily and capriciously in determining that the price information submitted by MDA was "required."

■ MDA contends that the absence of a clause in the final Med–Lite contract requiring public release of the Med–Lite launch mission prices indicates that it was voluntarily submitted. However, the parties' failure to successfully negotiate a contract clause that might have avoided this litigation should not determine the underlying issue. MDA also contends that the Request for Proposals ("RFP") permitted deviations and exceptions to the solicitation. Yet, the RFP also provided that significant deviations or exceptions may result in rejection of the proposal. The RFP included several statements indicating that bidders must submit certain information, in particular the CLINs at issue.[2] NASA did not exceed the bounds of reasonableness in concluding that MDA was "required" to submit this information.

Several recent decisions of this court also indicate that this type of information should be characterized as "required" under FOIA exemption four analysis. In *Lykes Bros. Steamship Co. v. Pena,* No. 92–2780, 1993 WL 786964, at *4–5 (D.D.C. Sept. 2, 1993), Judge Hogan upheld a determination by the Department of Transportation and the Maritime Administration that unit price information submitted in a government subcontract was not voluntary. Likewise, in *Chemical Waste Management, Inc. v. O'Leary,* No. 94–2230, 1995 WL 115894 (D.D.C.1995), Judge Johnson, upheld a Department of Energy determination that unit prices for waste disposal and other services were not voluntarily submitted in response to the government's

RFP and that therefore *National Parks* applied. This court's opinion in *McDonnell I,* 895 F.Supp. at 318, found that vital pricing information submitted in a NASA launch mission bidding situation cannot be "voluntarily" provided. Moreover, Judge Jackson's recent decision in *Martin Marietta Corp. v. Dalton,* 974 F.Supp. 37, 39 (D.D.C. 1997), recognized that the district court precedent in this circuit uniformly supports the notion that financial and commercial information, including CLINs and other key contract information, is "required" when submitted in a government contract bidding situation.

■ The court must also consider whether NASA correctly applied the *National Parks* test to the facts of this case. Under *National Parks,* FOIA exemption four only protects "required" financial or commercial information if disclosure is likely to (1) impair the Government's ability to obtain necessary information in the future, or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. *National Parks,* 498 F.2d at 770.

■ Although MDA contends that release of this information will impair the government's ability to procure future participants in government contracts, this position lacks merit. Government contracting involves millions of dollars and it is unlikely that release of this information will cause NASA difficulty in obtaining future bids. See *Martin Marietta Corp. v. Dalton,* 974 F.Supp. at 37, 39–40 (D.D.C. 1997); *McDonnell I,* 895 F.Supp. at 318; *Racal–Milgo Gov't Systems, Inc. v. Small Business Admin.,* 559 F.Supp. 4, 6 (D.D.C.1981). Also, as the government points out, the administrative agency has an incentive not to release information which will impair its future ability to successfully contract for launch missions. *See CC Distribs. v. Kinzinger,* No. 94–1330, 1995 WL 405445, at *4 (D.D.C. June 28, 1995) (concluding that the government is in the best position to determine the effect of disclosure on future bidding situations). As a result, this court should defer to the admin-

**2.** Section B.4 of the RFP stated, "Offerors shall propose ... prices for CLINs 1,2,3...." Section H.9 stated, "The Offeror shall propose fair and reasonable terms for Government termination of the launch service under CLINs 1 through 14, and 19 and 20 in accordance with the requirement of [Federal Acquisition Regulation] FAR...." AR 7 at 9–10.

istrative agency's determination that release will not cause impairment. *Id.* (deferring to the government agency's determination that disclosure would not dissuade firms from contracting with the government in the future).

The more substantial question is whether release of this information will cause substantial harm to MDA. Upon review of the record, the court sustains NASA's determination that release will not cause substantial competitive harm to MDA. Plaintiff MDA contends that this pricing information will cause substantial competitive injury in three ways: (1) domestic competitors in U.S. government bidding situations will be able to underbid MDA, (2) foreign competitors will be able to underbid MDA, and (3) future commercial contractors will be able to negotiate more effectively with MDA due to their knowledge of MDA's past prices. In support of this position, MDA submitted several affidavits. AR 5. NASA's letters of November 8, 1996 and December 19, 1996 responded to these claims. NASA indicated that release of this type of information furthers the goals of FOIA. AR 7 at 17. It reasoned that government contract pricing information is an "important and significant element of total mission prices" and serves the important function of opening agency action to public scrutiny. *Id.; see also Martin Marietta,* 974 F.Supp. at 39–40. NASA addressed the affidavits submitted by MDA, indicating that MDA did not provide the required level of detail evidencing substantial competitive harm. AR 7 at 17–23. NASA also disputed many of MDA's contentions, arguing that (1) bidders compete on a variety of factors other than price, (2) foreign competitors are not likely to be substantially aided by release of this data, and (3) any difficulty MDA may face in future commercial contract negotiations does not qualify as a substantial competitive injury and should be viewed as the cost of doing business with the Government. *Id.* NASA also addressed MDA's claims as buttressed by MDA's November 16, 1996 submission. NASA December 19, 1996 Letter. NASA replied in detail to these affidavits and comments, disputing many of the claims in these affidavits with extensive replies by experienced NASA personnel. *Id.*

at 8. NASA's replies not only disputed the affidavits' conclusions but also the affidavits' assumptions and underlying reasoning. *Id.*

The administrative record in this case differs substantially from that confronted in *McDonnell I,* in which this court held that NASA acted arbitrarily and capriciously by supporting its decision with bare conclusory assertions. Here, the administrative record provides evidence that NASA rebutted MDA's arguments with detailed analysis. Unlike *McDonnell I,* this administrative record indicates that NASA consulted individuals who collectively have been involved with more than 200 Delta launches, have more than 80 years experience with NASA, and were intimately familiar with MDA's arguments and evidence. *Id.* Based on this administrative record, the court finds no reason to disturb NASA's decision to release this pricing information.

### III. Conclusion

For the reasons set forth herein, defendant's motion for summary judgment concerning disclosure of the information at issue will be granted. Plaintiff's cross-motion for summary judgment will be denied, and both parties' motions to supplement the administrative record will be granted. Separate orders shall issue this date.

### *ORDER*

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's Cross–Motion for Summary Judgment, the parties' oppositions and replies, and the entire record, it is by the Court this 10th day of October, 1997, for the reasons set forth in the accompanying opinion,

ORDERED that Defendant's Motion for Summary Judgment and it hereby is granted; and it is

FURTHER ORDERED that Plaintiff's Cross–Motion for Summary Judgment be and it hereby is denied; and it is

FURTHER ORDERED that the instant case is hereby dismissed.