922 F.Supp. 235 (1996)
McDONNELL DOUGLAS CORPORATION, Plaintiff,
v.
UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Defendant.
No. 4:95CV431 CDP.
United States District Court, E.D. Missouri, Eastern Division.
April 16, 1996.
*236 *237 Michael P. Burke, Dennis C. Donnelly, Partner, Bryan Cave, St. Louis, MO, for plaintiff.
Eric T. Tolen, Asst. U.S. Attorney, St. Louis, MO, Daniel T. Riordan, E.E.O.C., Office of General Council, Washington, DC, for defendant.

MEMORANDUM AND ORDER
PERRY, District Judge.
This reverse FOIA case presents the question whether FOIA's exemption 4 applies to otherwise privileged documents that were submitted to the EEOC pursuant to an administrative subpoena. The Court agrees with the plaintiff/submitter here that the documents are commercial or financial information that is confidential and privileged under exemption 4, and that the EEOC should be enjoined from producing them pursuant to a FOIA request made by a private litigant.
This case is before the Court on the parties' cross-motions for summary judgment. Plaintiff McDonnell Douglas Corporation (MDC) asks the Court to enjoin the United States Equal Employment Opportunity Commission (EEOC) from releasing to a third party documents MDC produced to the EEOC during a discrimination investigation. Plaintiff brings this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552, the Trade Secrets Act, 18 U.S.C. § 1905, and the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.
MDC had delivered the "adverse impact analyses" at issue here to the EEOC as part of the EEOC's investigation of possible pattern and practice discrimination arising out of two large-scale reductions in force at McDonnell Douglas. When a FOIA request for the documents was filed by an attorney for an individual discrimination plaintiff, the EEOC initially determined that the adverse impact analyses were exempt from disclosure pursuant to FOIA exemption 4. However, after an internal agency appeal, the EEOC reversed its decision and advised MDC that it would disclose the adverse impact analyses to the FOIA requestor.
In response, MDC filed the present action. The parties consented to a temporary restraining order enjoining temporarily the disclosure of the subject documents, and agreed to the filing of cross-motions for summary judgment to resolve all issues in the case.

I. Facts

1. In July 1990, MDC engaged in a large scale reduction of its work force. As a result of this RIF, approximately 5,000 employees were terminated in St. Louis. In January 1991, MDC implemented a second reduction in force affecting approximately another 5,000 employees in the St. Louis area.
2. The McDonnell Douglas Missile Systems Company ("MDMSC") prepared adverse impact analyses, at the request of its attorneys, for the purpose of obtaining legal advice about the legal ramifications of these reductions in force. The adverse impact analyses are a comprehensive analysis of the *238 work force segregated by product division and job groups. In each product division, the analysis examines the employees being laid off compared to those retained, according to gender, race, and age groups. Mathematical formulas were used in the analysis to determine the statistical impact on the various groups under the discrimination laws. The adverse impact analyses were captioned "Privileged Legal Communication" and were disseminated only to those individuals who had a need to know the content of a document because of their jobs.
3. The RIFs in 1990 and 1991 triggered the filing of a number of discrimination charges against MDC. As a result of these discrimination charges, the St. Louis district office of the EEOC decided to investigate the discrimination charges collectively in order to determine whether MDC had engaged in a pattern and practice of age discrimination. During the EEOC's pattern and practice investigation, approximately 150 individual discrimination charges were pending.
4. On June 21, 1991, the Commission issued subpoenas to MDC to produce documents pertaining to the charges. MDC provided the EEOC with thousands of corporate documents and computer tapes, and objected to producing other documents. By letter dated September 18, 1991, the EEOC stated to MDC, "The Commission recognizes that some documents may be protected by the attorney-client privilege and that MDC and its components have not waived this privilege." It went on to suggest a procedure for the submission of privileged documents to the agency. Eventually MDC and the EEOC reached an accommodation whereby, on March 12, 1992, MDC provided the EEOC with three boxes of documents.[1] The documents provided to the EEOC were marked "Privileged Legal Communication" and contained the following legend:
This document contains McDonnell Douglas trade secrets or confidential and proprietary commercial, technical, and other business information furnished in confidence and exempt from public disclosure under the Freedom of Information Act. Unauthorized disclosure outside the recipient organization of the United States Government is prohibited by 18 U.S.C. § 1905.
The documents produced included the adverse impact analyses at issue here.
5. In producing the documents to the EEOC, David Heath, an assistant general counsel for MDC, produced the documents to the EEOC with the following transmittal letter:
This note will confirm my delivery today of three boxes containing documents set aside by MDC under the view they were legally privileged as attorney advice memoranda or attorney work product. Upon further review, we have decided to disclose these materials. Given our recent dispute regarding redacted documents, we have chosen not to obliterate legends on these documents denominating them as legally privileged. The fact that such legends remain should not be construed as a waiver of MDC's right to claim and maintain legal privileges in appropriate instances involving other documents.
Heath has provided an affidavit stating that he believed that the disclosure to the EEOC of these documents constituted no more than a limited waiver of the attorney-client privilege, therefore protecting such documents from disclosure to other parties.[2]
6. The EEOC concluded that there was insufficient evidence that employees between the ages of 40 and 54 had been terminated as part of a pattern and practice of age discrimination. However, the EEOC did find that a substantial number of employees who were 55 and older had been selected for termination because of their age. During the fall of 1992, the EEOC commenced conciliation efforts to secure relief for those former employees who had been terminated and were 55 and over. The negotiations resulted in a compromise in the form of a consent decree, *239 which United States District Judge Carol E. Jackson entered on August 12, 1993.
7. On March 18, 1993, Samuel H. Liberman, an attorney representing Teresita Glatz in an individual employment discrimination action, filed a FOIA request with the EEOC. Specifically, Mr. Liberman requested:
The production of all documents, tapes or other materials produced to [EEOC] by McDonnell Douglas or any of its divisions, affiliates, or subsidiaries with regard to the EEOC's investigation of a pattern or practice of discrimination with regard to lay offs during the period between January 1, 1990 and the present date ... and any other information produced by McDonnell Douglas indicating the existence of a possible pattern or practice of discrimination, including but not limited to all documents considered and/or used in EEOC's considerations, analysis and actions leading up to and carrying out the proposed consent decree or other activities relating to Cause No. 4:93CV00526 CEJ in the United States District Court for the Eastern District of Missouri.
8. By letter dated June 8, 1994, the regional attorney for the EEOC's St. Louis district office informed McDonnell Douglas that a FOIA request for copies of "reduction in force systems, adverse impact analyses" for the MDMSC had been received and requested MDC's comments on the applicability of exemption 4 to these documents. The letter stated the agency's conclusion that exemption 4 protected trade secrets and confidential commercial and financial information, and cited the case of National Parks & Conservation Ass'n v. Morton, 498 F.2d 765 (D.C.Cir.1974) for its definition of "confidential." The regional attorney requested that MDC provide answers to the following questions for the purposes of assisting her in making a preliminary determination on disclosing the documents:
i. Whether the requested information contains trade secrets or "confidential" information;
ii. If it contains trade secrets or confidential information, the identity of the precise information, by page, and line;
iii. If it contains trade secrets, an explanation of why each identified portion is considered to be a trade secret; and
iv. If it contains confidential information, an explanation of why disclosure of each identified portion is likely to [cause] substantial harm to [your] competitive position.
McDonnell Douglas responded to the regional attorney's request, by letter dated June 24, 1994, arguing that the adverse impact analyses should not be released because they were entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, 29 C.F.R. § 1610.17(b)-(c), FOIA exemptions 4 and 6, the Trade Secrets Act, 18 U.S.C. § 1905, the attorney-client privilege, attorney work product, and the self-critical analysis privilege. Among numerous other arguments, MDC asserted that the documents were covered by exemption 4 on the basis of the attorney-client privilege and as confidential commercial information under the test of confidentiality contained in Critical Mass Energy Project v. Nuclear Regulatory Commission, 975 F.2d 871 (D.C.Cir. 1992) (en banc), cert. denied, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). MDC also stated, in this letter, that the documents "were not voluntarily produced", but were produced pursuant to subpoena.
9. On July 11, 1994, the St. Louis district office of the EEOC issued its determination denying Mr. Liberman's request for the documents and finding that they were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4), "solely on the grounds that they constitute trade secrets and confidential commercial information." The regional attorney expressly rejected the other arguments raised.
10. On July 15, 1994, Mr. Liberman filed an administrative appeal with the EEOC requesting a review of the decision of the St. Louis district office. The EEOC appeals office then, by letter dated September 1, 1994, informed MDC that it did not believe MDC's prior response sufficiently explained the "confidential" nature of the requested information, and asked MDC to again respond to the same four questions previously *240 asked. The letter explained that because "we have determined that you were required to submit the information covered by this request," the National Parks "competitive harm" standard applied rather than the broader Critical Mass test.
11. McDonnell Douglas responded to the EEOC's request by letter dated September 19, 1994. In this letter MDC again argued that the documents in question were protected by the attorney-client privilege, had always been treated as confidential, and had been held to be privileged and non-discoverable in various lawsuits.[3] In addition, MDC again argued that the documents were not "required" and therefore were governed by the Critical Mass test rather than by the National Parks "competitive harm" test.
12. On March 1, 1995, the EEOC's assistant legal counsel notified MDC of the EEOC determination that McDonnell Douglas had failed to meet its burden to show the documents were covered by exemption 4. The assistant legal counsel noted that none of the evidence offered by McDonnell Douglas as reasons for non-disclosure under exemption 4 addressed the issue of competitive injury under the National Parks test. The assistant legal counsel found that all claims of privilege had been withdrawn when the documents were released to the EEOC and that, even if those claims had not been withdrawn, submission of the documents to a litigation adversary such as the EEOC would have dissolved any privilege. The March 1, 1995 letter stated the EEOC position that National Parks, not Critical Mass applied, as follows: "In general, we believe that any documents submitted at the request of EEOC are `required' rather than `voluntary' within the meaning of Critical Mass. The non-voluntary nature of the submission in this case is even more clear because the adverse impact analyses were provided to the agency only after EEOC had issued an administrative subpoena and brought a judicial action to enforce the subpoena."

II. Discussion

Plaintiff argues that the disclosure of the subject documents is prohibited under exemption 4 of FOIA and the Trade Secrets Act because the adverse impact analyses are commercial information and are privileged and confidential. Plaintiff further argues that the adverse impact analyses are exempt from disclosure under FOIA exemption 3, and two Title VII sections which prohibit disclosure of documents acquired by the EEOC during investigation and conciliation, 42 U.S.C. § 2000e-8(e) and 42 U.S.C. § 2000e-5(b).
The EEOC argues that the administrative record shows that plaintiff failed to meet its burden of showing that the documents were exempt from disclosure under exemption 4. Specifically, defendant contends that plaintiff failed to show that disclosure of the subject documents would hinder the EEOC's ability to obtain similar information in the future or that release of this information would cause substantial harm to its competitive position. Defendant further argues that plaintiff waived any claim of privilege when it released the documents to the EEOC, and that plaintiff has failed to prove that the documents are trade secrets. Defendant further argues that Title VII does not prevent disclosure of the subject documents.

A. Scope of Review

Judicial review of the EEOC's decision is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Chrysler Corp. v. Brown, 441 U.S. 281, 317-318, 99 S.Ct. 1705, 1725-1726, 60 L.Ed.2d 208 (1979); General Dynamics Corp. v. Marshal, 572 F.2d 1211, 1217 (8th Cir.1978), cert. granted, vacated, and remanded, 441 U.S. 919, 99 S.Ct. 2024, 60 L.Ed.2d 392 modified, 607 F.2d 234 (8th Cir.1979). The standard *241 for review in this reverse FOIA action is whether the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see Chrysler Corp. v. Brown, 441 U.S. at 317-18, 99 S.Ct. at 1725-26; Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1972). This section has been interpreted by the Supreme Court "to require the reviewing court to engage in substantial inquiry." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). A substantial inquiry mandates that the Court determine whether the decision was determined on a consideration of the relevant factors and whether there has been a clear error of judgment. Id. at 416, 91 S.Ct. at 823.
Under § 706 judicial review is to be on the "whole record." 5 U.S.C. § 706. The primary focus for judicial review under § 706(2)(A) is the administrative record already in existence; however, this Court can also consider additional evidence and testimony which helps explain the administrative record. Camp v. Pitts, 411 U.S. at 142, 93 S.Ct. at 1244; Missouri Coalition for the Environment v. Corps. of Engineers, 866 F.2d 1025, 1031 (8th Cir.), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 42 (1989).

B. Exemption 4

FOIA's exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). There is no dispute over whether the adverse impact statements obtained here are "commercial or financial information obtained from a person", but the parties strenuously contest whether these documents are "privileged" or "confidential". For the reasons that follow, the Court concludes that the agency record shows clearly that the records are both privileged and confidential as a matter of law, and so are entitled to the protections of exemption 4.
In order to determine whether the documents fit the exemption 4 definition of "confidential", the Court must first determine whether the documents were voluntarily produced. If the documents were voluntarily produced then they are protected from disclosure under exemption 4 if they are (1) commercial or financial information, (2) voluntarily submitted to the agency, and (3) not customarily disclosed to the public. Critical Mass Energy Project v. NRC, 975 F.2d 871 (D.C.Cir.1992) (en banc), cert. denied, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). Information that "a person is obliged to furnish to the Government", however, is still governed by the two-part test of National Parks and Conservation Assoc. v. Morton, 498 F.2d 765 (D.C.Cir.1974), and is only protected by exemption 4 where disclosure of the information would either (1) impair the government's ability to obtain necessary information in the future, or (2) cause substantial harm to the submitter's competitive position.
Here the adverse impact analyses were among the documents subpoenaed by the EEOC. MDC did not initially produce them in response to the subpoena, but objected on a variety of grounds. It later produced them after negotiations with the EEOC. The EEOC argues that the documents were "required" or not produced voluntarily because they were produced pursuant to subpoena. The Court agrees with plaintiff that the EEOC applied the incorrect legal standard here, and that its finding that the documents were required is not supported by substantial evidence in the agency record.
First, it is not at all clear from a review of the record that the EEOC even made a factual finding on this issue. From the beginning of the parties' correspondence, the agency focused on whether MDC could show substantial competitive harm from disclosure, which is only the appropriate focus once the voluntary/required determination has been made. In its initial letter to MDC the EEOC referred only to the National Parks definition of confidential and assumed, without discussion, that that was the proper test. In later correspondence the EEOC stated its position that all documents produced to the EEOC during the course of its investigations were "required" and that therefore Critical Mass had no application. This position is also reflected in the EEOC's FOIA regulations, *242 which define "confidential commercial information" using the National Parks phraseology that "disclosure could reasonably be expected to cause substantial competitive harm." 29 C.F.R. § 1610.19(a)(1). The EEOC's failure to examine the facts of this case to determine whether the submission was voluntary or required is contrary to the law as set forth in Critical Mass, and is arbitrary and capricious.
Second, to the extent the EEOC did consider the facts of this case, it viewed only the facts favorable to its predetermined position, and interpreted the available facts incorrectly. For example, the EEOC's March 1 letter stated:
The non-voluntary nature of the submission in this case is even more clear because the adverse impact analyses were provided to the agency only after EEOC had issued an administrative subpoena and brought a judicial action to enforce the subpoena.

(Emphasis added). This conclusion is wholly unsupported by the record, and even the EEOC now concedes that the adverse impact analyses were not the subject of any judicial enforcement action, although they were subpoenaed. Had their production been compelled by a court, the undersigned would no doubt agree that they were "required" documents. The mere existence of agency subpoena power cannot, however, mean that any document that is produced pursuant to subpoena is "required." The EEOC's argument in this regard appears to be that because employers are required to cooperate in its investigations, and because the EEOC has administrative subpoena powers, no company may refuse to produce any requested document, ever, on any grounds. This conclusion ignores the fact that subpoenaed parties may challenge, both administratively and through objections to enforcement proceedings, the Commission's subpoenas. It simply is not correct that everything the EEOC might ask for qualifies as "required" under the Critical Mass test. Here, no court enforcement of the subpoena was sought or obtained, because MDC decided to produce the documents despite its previously-asserted claim of privilege. Moreover, given that this Court has repeatedly ruled that the documents were privileged and did not have to be produced in discovery with private litigants, it is highly likely that if the EEOC had attempted to enforce the subpoena as to these documents, it would have obtained the same result obtained by the private litigants  a rulling that the documents were privileged and need not be produced. This shows that the production in fact was voluntary, not required.
Similarly, the Court is not persuaded by the "admission" of MDC, made in its argument to the agency of June 24, 1994, that the documents were not voluntarily produced. The same letter that makes that statement contains a lengthy argument that the documents are exempt under the Critical Mass definition. Counsel's statement in the letter is not determinative of the issue, and the record shows that the EEOC did not rely on this statement to reach its decision, but merely used it as a post-hoc justification for its actions.
The Court concludes that the documents were produced voluntarily, and that to the extent the EEOC found that they were not, that finding was not supported by the administrative record, and was arbitrary, capricious, and abuse of discretion and contrary to law.
The next question is whether MDC customarily disclosed the documents to the public. The undisputed evidence in the administrative record shows that not only did MDC not disclose these documents to the public, it carefully guarded their disclosure even within the corporate structure. All the documents were stamped "confidential", they were not disseminated beyond those with a need to know their contents, and MDC strenuously, and successfully, opposed their production in discovery in multiple civil cases. On the administrative record as a whole MDC clearly demonstrated that the records were protected as confidential under exemption 4.
Additionally, the Court believes that the administrative record also shows that the documents are protected by the attorney-client privilege, and are entitled to exemption 4 on this basis as well. The *243 agency acted arbitrarily and capriciously by refusing to recognize this privilege. The record establishes that the analyses were prepared at the request of counsel for the purpose of rendering legal advice. The record also reveals that the communications were kept confidential. Under the rule of Diversified Industries, Inc. v. Meredith, 572 F.2d 596 (8th Cir.1977) (en banc), MDC's disclosure of the documents to the EEOC constituted only a limited waiver and did not destroy the privilege. Although the EEOC contends that Diversified was wrongly decided and conflicts with other cases, it is the prevailing law of this Circuit, and is consistent with the holding of the Supreme Court in Upjohn Co. v. United States, 449 U.S. 383, 387, 101 S.Ct. 677, 681, 66 L.Ed.2d 584 (1981). Moreover, the EEOC's argument that Diversified and the later Eighth Circuit decision in In re Chrysler Motors Corp. Overnight Evaluation Program, 860 F.2d 844 (8th Cir.1988), are "difficult to reconcile" is simply incorrect. Diversified involved, as here, an argument that the attorney-client privilege had been waived by production of a privileged communication to a governmental agency. Chrysler, on the other hand, involved the work-product rule, and the court held that Chrysler's production of the materials to its litigation adversaries waived any work-product protections. Because the work-product rule protects the adversary process itself, as opposed to protecting the attorney-client relationship, the standards for waiver are different. Attorney-client privilege is generally waived by disclosure of the confidential communications to any third parties, except in the limited waiver situation recognized in Diversified, where the party claiming the privilege nevertheless produces the communication to a governmental agency for a limited purpose. See also United States v. Shyres, 898 F.2d 647, 657 (8th Cir.), cert. denied, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990) (privilege not waived by production of documents to grand jury); In re Grand Jury Subpoena, 478 F.Supp. 368, 371 (E.D.Wis.1979) (privilege not waived by submission of documents to SEC).
Here the Court finds that MDC's production of these documents to the EEOC did not constitute a waiver of the attorney-client privilege. As the materials are undisputedly "commercial or financial"[4], they are covered by exemption 4 without regard to the Critical Mass/National Parks distinction discussed above. See also Miller, Anderson, Nash, Yerke & Wiener v. United States Dept. of Energy, 499 F.Supp. 767, 771 (D.Or.1980); Washington Post Co. v. HHS, 603 F.Supp. 235, 237-39 (D.D.C.1985), rev'd on other grounds, 795 F.2d 205 (D.C.Cir.1986).
Because the Court concludes that the adverse impact analyses are exempt from disclosure under exemption 4 of FOIA, it is not necessary to determine if they are also exempt under exemption 3. For the reasons stated above, the EEOC's motion for summary judgment will be denied, MDC's motion will be granted, and the agency will be permanently enjoined from disclosing the requested information pursuant to the Freedom of Information Act.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for summary judgment [# 17] is denied and plaintiff's motion for summary judgment [# 19] is granted.
IT IS FURTHER ORDERED that plaintiff's motions for preliminary injunction [# 4, # 12] are denied as moot.
NOTES
[1] On April 20, 1992, the EEOC filed a subpoena enforcement action related to these subpoenas, but the enforcement action did not involve the documents at issue in this lawsuit.
[2] The EEOC argues that the Court may not consider this affidavit under the proper standard of review. The Court disagrees, and will consider the affidavit to the extent it helps explain the administrative record.
[3] MDC objected to requests to produce the documents in all litigation pending in this district arising from the RIFs. MDC's attorney-client privilege objection was upheld in all cases in which motions to compel were filed. See Sinskey v. McDonnell Douglas Corp., 4:92CV1122 JCH, 1993 WL 835282 (E.D.Mo.Order dated June 28, 1993); Thompson v. McDonnell Douglas Corp., 4:92CV1354 GFG, 1993 WL 835281 (E.D.Mo.Order dated September 23, 1993); Eason v. McDonnell Douglas Corp., 4:92CV1355 GFG, 1993 WL 835280 (E.D.Mo.Order dated July 13, 1993); Cohen v. McDonnell Douglas Corp., 4:92CV1048 GFG, 1993 WL 835279 (E.D.Mo.Order dated July 12, 1993).
[4] Under the prevailing law of this circuit, even privileged materials are not covered by exemption 4 if they are not also "commercial or financial", see Brockway v. Department of the Air Force, 518 F.2d 1184 (8th Cir.1975). This is not an issue in this case because it is undisputed that the documents are commercial or financial.