10 F.Supp.2d 1087 (1998)
TRIFID CORPORATION, Plaintiff,
v.
NATIONAL IMAGERY AND MAPPING AGENCY, Defendant.
No. 4:97-CV-2163 CAS.
United States District Court, E.D. Missouri, Eastern Division.
July 17, 1998.
*1088 *1089 Thomas J. DeGroot, Husch and Eppenberger, St. Louis, MO, for Plaintiff.
Maria C. Sanchez, Office of U.S. Attorney, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
SHAW, District Judge.
This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons which follow, the Court will grant defendant's motion for summary judgment and deny that of the plaintiff.

I. Background.

In this "reverse" Freedom of Information Act case, plaintiff TRIFID Corporation ("TRIFID" or "plaintiff") seeks to prevent disclosure of certain unit price information contained in a contract between it and defendant National Imagery and Mapping Agency ("NIMA" or "defendant"). One of plaintiff's competitors has requested the information pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 et seq. TRIFID contends the information is excluded from disclosure by exemption four of FOIA, 5 U.S.C. § 552(b)(4) (exempting "trade secrets and commercial or financial information obtained from a person and privileged or confidential"), and by the Trade Secrets Act, 18 U.S.C. § 1905. NIMA disagrees and has stated its intention to comply with the FOIA request unless this Court concludes that exemption four applies.
The parties appeared before the Court on October 24, 1997, for hearing on plaintiff's motion for temporary restraining order. By agreement of the parties, the Court ordered that defendant not disclose the disputed information until the preliminary injunction hearing could be held on December 17, 1997. On November 25, 1997, after consultation with the parties and pursuant to Rule 65(a), Federal Rules of Civil Procedure, the Court consolidated the hearing on plaintiff's application for preliminary injunctive relief with trial on the merits. By consent, the order of *1090 October 24, 1997 concerning nondisclosure remains in full force and effect until resolution of this matter.
By order dated May 20, 1998, the Court ordered defendant to provide plaintiff with a certified copy of the entire administrative record in this matter. In compliance with the Court's order, the parties informally resolved their differences concerning the administrative record. Accordingly, on July 2, 1998, the Court granted defendant's agreedupon Motion to Amend the Administrative Record to withdraw from consideration documents numbered 1 and 19-26 of the administrative record because these items (i) were created after defendant's determination to release information pursuant to the FOIA request at issue, or (ii) relate to other contractors' pricing information. The Court therefore does not consider those documents in resolving the instant motions.
The Court granted plaintiff leave to file a supplemental memorandum in support of its motion for summary judgment on July 2, 1998, following its review of the administrative record, and defendant filed its response thereto on July 10, 1998.
The matter now being properly before the Court for decision, the Court turns to the merits of the motions pending before it.

II. Summary Judgment Standard.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed. R.Civ.P. 56(c).
Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Anderson, 477 U.S. at 257, 106 S.Ct. 2505; City of Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir.1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

III. Facts.

TRIFID is a Missouri corporation which develops computer software to create seamless photographic images of geography throughout the world. NIMA is a Component Agency of the United States Department of Defense. Effective October 1, 1996, NIMA took over the duties and functions of the Defense Mapping Agency ("DMA"), a former Department of Defense Component Agency.
On August 20, 1996, DMA issued Solicitation Number DMA402-96-R-003, a Negotiated Request for Proposals (RFP), seeking to procure controlled image base (CIB). (NIMA Resp. to Def.'s Mot. Summ. J., Ex. C.) Section A of the RFP provided, inter alia, that all offerors must have a secret facility clearance in order to participate in the procurement. (Id.) Section B of the RFP provided in pertinent part, "The contractor shall furnish all labor, equipment, materials (except those furnished by the Government), quality control, security and supervision required to deliver to the Defense Mapping Agency Controlled Image Base (CIB) in both compressed, on Compact Disks (CD-ROMs), and uncompressed forms, on Eight (8) mm data cassettes." Amendments to the RFP were issued on August 20, 1996, September *1091 17, 1996, October 8, 1996, October 31, 1996, November 18, 1996, and December 3, 1996.
TRIFID was one of four contractors to respond to the RFP. As part of its proposal, TRIFID provided NIMA with dollar figures ("unit prices") it proposed to charge for each of the four types of images ("CIB cells") specified in the RFP, for the initial "base" contract year and three one-year options.
On March 21, 1997, NIMA awarded contracts to three of the four contractors which submitted proposals. The base year of contract DMA402-96-R-003 (the "contract") ran from March 31, 1997 through September 30, 1997, with option years covering the periods October 1, 1997 through September 30, 1998 (first option year), October 1, 1998 through September 30, 1999 (second option year), and October 1, 1999 through September 30, 2000 (third option year).[1]
By letter dated July 25, 1997, ERIM International, Inc. ("ERIM"), a competitor of TRIFID, lodged a FOIA request with NIMA's St. Louis, Missouri facility, seeking Section B unit price information from all participants in the RFP process. (See Admin. Rec. at 2.) NIMA advised TRIFID of the FOIA request by letter dated August 26, 1997 from Barbara J. Bahr, Assistant General Counsel, Mission Support and Administrative Law. (Admin. Rec. at 8; NIMA Mem. Supp. Summ. J., Ex. A.) In the letter, NIMA stated that if TRIFID had any objections to release of the information, it should provide a detailed explanation of its objections by September 8, 1997. NIMA sent similar letters to the other successful contracting parties, Hughes Information Technology Systems and Harris Corporation, ISD. (Admin. Rec. at 5, 6.)
TRIFID responded to the NIMA letter three days later, by letter dated August 29, 1997, from Nancy Riddle, its Director of Administration. TRIFID notified NIMA that it objected to the release of unit price information. (Admin. Rec. at 9; NIMA Mem. Supp. Mot. Summ. J., Ex. C.) TRIFID enclosed a copy of a letter dated May 25, 1995 prepared by its attorney Thomas DeGroot (the "DeGroot letter"), objecting to a prior FOIA request. (Id.) TRIFID also submitted the affidavit of Ms. Riddle, which (i) stated that unit price information is a "closely guarded secret at TRIFID"; (ii) detailed the measures TRIFID has taken to restrict access to unit price information, which it considers "proprietary"; and (iii) asserted that disclosure of TRIFID's unit price information to its competitors would put TRIFID at a competitive disadvantage and cause it substantial harm particularly with respect to the four levels of service covered by the contract, by giving competitors insight into its profit margins, pricing and bidding strategy, and could allow competitors to formulate future bids designed to undercut TRIFID's prices. (Id.)
In the DeGroot letter, TRIFID made the following arguments: TRIFID's unit price information is a closely guarded secret which is not disclosed to competitors; access to the information would give a competitor insight in TRIFID's cost structure and profit margin; TRIFID's unit price information met the requirements for nondisclosure under FOIA's exemption four, 5 U.S.C. § 552(b)(4); TRIFID voluntarily supplied the information as part of the bidding process for contract No. DMA 402-96-R-003; the test formulated in Critical Mass Energy Project v. Nuclear Regulatory Commission,[2] should be applied to determine whether the unit price information is exempt from disclosure under FOIA; under the Critical Mass test, the unit price information should not be disclosed because it is confidential and was voluntarily provided; and finally, because the information is not subject to disclosure under the Critical Mass test, neither Department of Defense (DOD) nor Federal Acquisition Regulations (FAR) can require disclosure. The letter stated that if DMA decided to overrule TRIFID's objection, it would serve as notice that TRIFID would seek court action to prevent release of unit price information.
NIMA also received written objections to disclosure from Harris Corporation. After considering the objections and reviewing applicable legal precedent, NIMA determined *1092 that unit price information submitted by the three successful bidders, including TRIFID, should be disclosed, but unit price information submitted by unsuccessful bidder Raytheon E-Systems should not be disclosed. (Admin. Rec. at 13; Bahr Decl. at 2, ¶ 6.)
NIMA informed the requesting party, ERIM, of its disclosure determination by undated letter signed by Laura B. Snow, Director, Congressional and Public Liaison, Initial Denial Authority. Ms. Snow also informed ERIM of its right to appeal the partial denial of its request in writing to the NIMA Chief of Staff within sixty days. (Admin. Rec. at 13.)
NIMA responded to TRIFID by letter dated October 3, 1997, signed by Mary F. Slattery, Associate General Counsel for NIMA's Mission Support and Administrative Law Division. The letter restated the points raised by TRIFID in its August 29, 1997 submission, and stated: "[S]ince you have failed to show how release of the information will cause TRIFID Corporation substantial competitive harm, the requested records should be released.... Unless you initiate court action to prevent release, the records requested by ERIM International will be released on 24 October 1997." (Admin. Rec. at 16; NIMA Mem. Supp. Summ. J. Mot., Ex. C.)
TRIFID did not attempt to submit any additional arguments or information to NIMA after it received the October 3, 1997 letter, nor did NIMA inform TRIFID that it could do so. This action was filed on October 24, 1997.

IV. Discussion.

This Court's review of NIMA's decision to disclose information pursuant to FOIA is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. See Chrysler Corp. v. Brown, 441 U.S. 281, 317-18, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); General Dynamics Corp. v. Marshall, 572 F.2d 1211, 1217 (8th Cir.1978), cert. granted, vacated, and remanded, 441 U.S. 919, 99 S.Ct. 2024, 60 L.Ed.2d 392, modified, 607 F.2d 234 (8th Cir.1979).

A. Scope of Review.
As a threshold matter, the parties differ over the scope of the Court's review in this matter. Under the APA, a plaintiff is entitled to de novo review only if the agency's action is adjudicatory in nature and its factfinding procedures are inadequate. Nesseim v. Mail Handlers Ben. Plan, 995 F.2d 804, 807 (8th Cir.1993); Pacific Architects and Engineers, Inc. v. United States Dept. of State, 906 F.2d 1345, 1347 (9th Cir.1990); Acumenics Research & Technology v. United States Dept. of Justice, 843 F.2d 800, 804-05 (4th Cir.1988) (reverse FOIA action); see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (interpreting 5 U.S.C. § 706(2)(F)).
NIMA's action in determining whether to disclose data pursuant to a FOIA request is an adjudicatory action. See Acumenics, 843 F.2d at 805; Pacific Architects, 906 F.2d at 1348; Comdisco, Inc. v. General Services Admin., 864 F.Supp. 510, 513 (E.D.Va.1994). Therefore, the relevant inquiry in this case is whether NIMA's factfinding procedures were inadequate.
TRIFID first contends that NIMA's factfinding procedures were inadequate because NIMA's FOIA regulations, 32 C.F.R. §§ 293 et seq., do not address the rights of a nongovernmental party which has submitted documents to NIMA to contest their disclosure pursuant to a FOIA request.
Defendant responds that de novo review is limited to cases in which an agency's administrative procedures were "severely defective," citing National Org. for Women, Washington, D.C. Chapter v. Social Security Admin. of Dept. of Health and Human Servs., 736 F.2d 727, 745 (D.C.Cir.1984) (Mikva & McGowan, JJ., concurring), and denies that its procedures fall within that category. Defendant states that TRIFID's rights to contest disclosure under a FOIA request are governed by FOIA and Executive Order No. 12600.[3] Defendant explains that the executive order requires government agencies to give a submitter reasonable notice prior to any FOIA disclosure, and includes *1093 disclosure guidelines which were subsequently implemented by the Department of Defense for its various component agencies, including NIMA, at 32 C.F.R. § 286.23(h)(1).
The Court finds that under 32 C.F.R. § 286.23(h)(1), TRIFID was entitled to and received notice of the FOIA request and was given the opportunity to object. Therefore, TRIFID has not established that de novo review is required because of the lack of a notice provision in 32 C.F.R. §§ 293 et seq.
TRIFID next contends that Department of Defense FOIA regulations, 32 C.F.R. 286.23(h)(1), do not establish adequate fact-finding procedures because they: (i) do not require NIMA to set out in writing the supporting facts and conclusions it relied on for overruling TRIFID's objections; (ii) do not provide an objecting party with the right to an administrative appeal; and (iii) do not provide an objecting party the opportunity to submit additional information to NIMA following its review of an initial submission.[4]See 32 C.F.R. § 286.23(h)(1).
Defendant responds to plaintiff's first point by stating that under applicable regulations, NIMA is only required to give a brief written statement explaining why the submitter's objections are not sustained, see Exec. Order No. 12600, sec. 4, and that it adequately explained its decision by stating that TRIFID "failed to show how release of the information will cause TRIFID Corp. substantial competitive harm." (See Admin. Rec. at 16, letter from Slattery to Riddle of 10/3/97 at 1.)
An agency's explanation of its decision may be "curt"; to permit effective judicial review it need only indicate the determinative reason for the action taken. See Camp v. Pitts, 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). The Court finds that NIMA provided an explanation sufficient to indicate the determinative reason for the agency's decision to release by stating TRIFID failed to show substantial competitive harm. The phrase "substantial competitive harm" is a reference to the legal standard governing FOIA exemption four cases established in National Parks and Conservation Ass'n v. Morton, 498 F.2d 765 (D.C.Cir.1974) ("National Parks"), discussed infra. This conclusion is supported by the September 16, 1997 "Memorandum for Director, CP" prepared by Assistant General Counsel Barbara J. Bahr, which evaluates ERIM's FOIA request and the objections thereto under the National Parks standard. (See Admin. Rec. at 12, pp. 2-5.) In addition, the declarations submitted by Barbara J. Bahr, Mary F. Slattery and Hillary J. Morgan in connection with the instant motions further explain the reasons behind the agency's decision.[5] (See Exs. D-F, Def.'s Mem. Supp. Mot. Summ. J.)
With respect to plaintiff's second point concerning the absence of an appeal mechanism, defendant argues neither Executive Order No. 12600 nor the applicable regulations require that a submitter be given the opportunity for administrative appeal of a decision to release information pursuant to a FOIA request. Defendant cites two cases in which agency decisions to release information were upheld where the applicable procedures did not provide for an appeal, Acumenics, 843 F.2d at 805 & n. 4, and Lykes Bros. Steamship Co. v. Pena, No. 92-2780, 1993 WL 786964 (D.D.C. Sept.2, 1993).
Some cases suggest that an adequate fact-finding procedure is provided where there is notice, the ability to submit materials to the first level decision maker, the setting out of the agency's position by the decision maker, and the opportunity to appeal the initial disclosure decision. See National Org. for Women, 736 F.2d at 745-46 (Mikva & McGowan, JJ., concurring); Acumenics, 843 F.2d at 805 (citing National Org. for Women *1094 and approving factfinding procedure where regulations did not provide for an appeal but a face-to-face meeting between the submitter and the agency occurred following the initial disclosure decision). Other, more recent cases have approved factfinding procedures where no opportunity for appeal exists. See, e.g., RSR Corp. v. Browner, 924 F.Supp. 504, 508-09 (S.D.N.Y.1996) (agency factfinding procedures adequate where, in compliance with applicable regulations, plaintiffs were promptly notified of FOIA request and given opportunity to object to disclosure and substantiate their objections), aff'd, No. 96-6186, 1997 WL 134413 (Mar. 26, 1997), opinion vacated, (Apr. 17, 1997); Comdisco, 864 F.Supp. at 512, 513-14 (factfinding procedures adequate where submitter was able to lodge written objections to proposed disclosure and had telephone conferences with the agency); and Lykes Bros., 1993 WL 786964, at *1-2, *6 (factfinding procedures adequate where submitter was notified of FOIA request, had opportunity to lodge oral and written objections, and filed an "appeal" which the agency considered, although under applicable regulations the submitter had no right to a rehearing).
As these cases reflect, an opportunity for administrative appeal prior to disclosure is not clearly established as a prerequisite to the adequacy of factfinding procedures. The opportunity to submit additional information is similarly not a prerequisite to the adequacy of factfinding procedures. The Court therefore concludes the absence of an appeal mechanism and a formal mechanism to provide additional information do not render NIMA's procedures defective.
Plaintiff argues in its supplemental memorandum that the inadequacy of defendant's factfinding procedures is demonstrated by the fact that the requesting party, ERIM, was notified it could seek administrative appeal of the partial denial of its FOIA request (see Admin. Rec. at 13), while plaintiff, an objecting party, was instructed to seek relief with the courts if it disagreed with defendant's decision. (Admin. Rec. at 16).
Defendant responds that FOIA is a disclosure statute, which expressly grants a requesting party the right to appeal adverse determinations to the head of the agency, see 5 U.S.C. § 552(a)(6)(A)(i), but does not afford similar rights to a party seeking to block disclosure. Defendant states that it was acting in accordance with the FOIA's provisions when it notified ERIM of its right to an administrative appeal but did not afford the same right to plaintiff. Defendant labels as "disingenuous" plaintiff's argument that the rights of a requester seeking disclosure and a submitter seeking to block disclosure should be the same under a disclosure statute. Defendant contends that an objecting party's sole recourse of an adverse decision is to seek judicial review of an agency's decision under the APA, and nothing in the controlling statutes, executive orders or regulations requires an agency to provide the objecting party an administrative appeal of the initial decision.
The Court agrees that defendant's disparate treatment of ERIM and TRIFID with respect to administrative appeal rights complied with both the plain language and intent of FOIA and the regulations promulgated thereunder. See 5 U.S.C. § 552(a)(6)(A)(i); 32 C.F.R. § 286.23(h)(1) (entitling submitters of information to receive notice of FOIA requests and object to release of information); see also FBI v. Abramson, 456 U.S. 615, 621, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (stating that congressional policy underlying FOIA attempts to guarantee public access to most government documents). The Court concludes that the disparity in defendant's treatment of the requesting and objecting parties with respect to administrative appeal was proper, and does not render NIMA's factfinding procedures inadequate.
Finally, TRIFID contends it is entitled to de novo review because NIMA failed to follow the factfinding procedures of 32 C.F.R. § 286.23(h)(1) in two respects: (i) NIMA gave TRIFID only two weeks in which to prepare its objection to disclosure rather than the thirty days contemplated by the regulation; and (ii) the final decision to disclose the information was not made by an official equivalent in rank to an official who has authority to make a decision to withhold information sought pursuant to a FOIA request, as required by 32 C.F.R. § 286.23(h)(1).
*1095 Under the Administrative Procedure Act, a reviewing court is to set aside agency action found to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). In applying this standard, a court must assess whether prejudice has resulted. The statute states in pertinent part, "In making the foregoing determinations ... due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706; see J.H. Miles & Co., Inc. v. Brown, 910 F.Supp. 1138, 1146 (E.D.Va. 1995).
"Procedural irregularities are not per se prejudicial; each case must be determined on its individual facts and, if the errors are deemed to be minor and insubstantial, the administrative order should be enforced notwithstanding." NLRB v. Seine and Line Fishermen's Union of San Pedro, 374 F.2d 974, 981 (9th Cir.), cert. denied sub nom Biazevich v. NLRB, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967). Further, the burden to show that prejudice has resulted from procedural irregularity rests on the party claiming injury from the allegedly erroneous ruling. Id.; see also Panhandle Co-op. Ass'n, Bridgeport, Neb. v. EPA, 771 F.2d 1149, 1153 (8th Cir.1985) (holding that before agency action may be set aside for lack of punctuality, the aggrieved party must show it was prejudiced by the delay).
With respect to plaintiff's complaint that it was not allowed sufficient time to lodge objections, defendant states that Executive Order No. 12600 and 32 C.F.R. § 286.23(h)(1) afford a submitter a "reasonable" period of time to object. Defendant contends the thirty-day time period of § 286.23(h)(1) is not mandatory, but rather is provided parenthetically as an example of a reasonable time.
The Court agrees with defendant, and finds that plaintiff was given a reasonable time in which to lodge its objections. TRIFID responded to NIMA's letter within three days, although it had fourteen days to respond, and there is no indication in TRIFID's objections or otherwise that it needed additional time to formulate its objections. Plaintiff has neither alleged nor established the requisite prejudice, and the Court therefore rejects this argument.
Plaintiff's final argument concerns the authority of defendant's Associate General Counsel Ms. Slattery to determine that disclosure should be made. Plaintiff contends that under 32 C.F.R. § 293.6(c)(1), only NIMA's General Counsel and its Deputy Director are authorized to make a final determination to withhold information sought pursuant to a FOIA request. Plaintiff argues that pursuant to the requirements of 32 C.F.R. § 286.23(h)(1), only these persons or someone of equivalent rank can make the decision to disclose information, and Ms. Slattery is not of equivalent rank.
Defendant responds that 32 C.F.R. § 293.6(c)(1) has been superseded, and the present denial authorities for NIMA are its Director of Congressional and Public Liaison and the Chief of Staff, a Navy captain.[6] Defendant states that Ms. Slattery signed the letter to TRIFID acting on behalf of the Director of Congressional and Public Liaison, although this is not entirely clear from the administrative record. Finally, defendant contends without any evidentiary support that Ms. Slattery is of equivalent rank to the NIMA Chief of Staff.
The Court is uncertain whether plaintiff's argument is based on the appropriate subsection of the regulation at issue. Under 32 C.F.R. § 293.6(b), NIMA's Chief of Staff, Deputy General Counsel, Freedom of Information Act Officer, Component Directors and certain Associate General Counsels are delegated initial denial authority for FOIA requests. In contrast, under 32 C.F.R. § 293.6(c)(1), the subsection cited by plaintiff, only the NIMA Deputy Director and General Counsel are authorized to make final determinations on appeals of FOIA disclosure denials. The requirement that a final decision to disclose information be made by an official *1096 equivalent in rank to an official who would make the decision to withhold information, see 32 C.F.R. § 286.23(h)(1), could refer to initial denial authority or to final appeal authority.[7] In the former case, Ms. Slattery as an associate general counsel would be equivalent in rank to officials with initial denial authority; in the latter case, she would not. The Court has found no authority on this point, and none was cited by the parties.
Defendant has failed to submit evidence to substantiate its assertions concerning the provisions of 32 C.F.R. § 293.6(c)(1) and Ms. Slattery's rank. Therefore, the Court will assume that neither Ms. Slattery nor the Director of Congressional and Public Liaison had the authority to determine whether to disclose the records. Nonetheless, plaintiff has neither alleged prejudice nor attempted to meet its burden to show that prejudice has resulted from any procedural irregularity concerning who determined that disclosure should occur. See Panhandle, 771 F.2d at 1153.
The record in this case does not indicate that prejudice has resulted from any noncompliance with regulations concerning which officials have authority to make a decision to disclose. The declarations of Barbara J. Bahr, Mary F. Slattery and Hillary J. Morgan establish that plaintiff's objections were separately considered and reviewed by three of defendant's attorneys at different levels. (See Exs. D-F, Def.'s Mem. Supp. Mot. Summ. J.)[8] Further, as discussed infra, the Court concurs with defendant's determination that FOIA requires disclosure of the disputed information. Because no prejudice has been alleged or established from the alleged procedural inadequacies, they provide no basis for striking down NIMA's decision to disclose. Cf. Moore v. Madigan, 789 F.Supp. 1479, 1486-87 (W.D.Mo.1992) (plaintiff failed to establish prejudice resulting from allegations of procedural inadequacy resulting from an informal hearing), aff'd, 990 F.2d 375 (8th Cir.), cert. denied, 510 U.S. 823, 114 S.Ct. 83, 126 L.Ed.2d 51 (1993); City of Waltham v. United States Postal Service, 786 F.Supp. 105, 139 (D.Mass.1992) (Postal Service's failure to comply fully with public input and notice regulations, while not trivial, did not result in prejudice), aff'd, 11 F.3d 235 (1st Cir.1993).
For these reasons, the Court concludes that NIMA's factfinding procedures were adequate, both as set forth in the applicable regulations and as applied. As a result, de novo review is not appropriate.

B. Standard of Review.
Under the applicable standard of review, NIMA's decision to disclose may be set aside only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); Occidental Petroleum Corp. v. SEC, 873 F.2d 325, 337 (D.C.Cir.1989); General Dynamics Corp. v. Marshall, 572 F.2d at 1217; McDonnell Douglas Corp. v. United States EEOC, 922 F.Supp. 235, 240-41 (E.D.Mo.1996). Under this deferential standard of review, a court must examine whether the agency's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); McDonnell Douglas Corp. v. National Aeronautics & Space Admin., 981 F.Supp. 12, 14 (D.D.C. 1997).
Under the Administrative Procedure Act, judicial review is to be on the "whole record." 5 U.S.C. § 706. McDonnell Douglas v. EEOC, 922 F.Supp. at 241. The primary focus for judicial review under § 706(2)(A) is the administrative record and not a new record made initially in the reviewing court; a court may, however, consider additional evidence and testimony which helps explain the administrative record and the agency decision. Camp v. Pitts, 411 U.S. at 142, 93 S.Ct. 1241; see Missouri Coalition *1097 for the Environment v. Corps of Engineers of United States Army, 866 F.2d 1025, 1031 (8th Cir.), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 42 (1989).
The Court will not consider the litigation affidavits TRIFID submitted in support of its complaint for injunctive relief and motion for summary judgment, as the affidavits were not submitted to NIMA during the administrative process. The affidavits would constitute a "new record" in this Court, improperly supplementing the administrative record. See Camp v. Pitts, 411 U.S. at 142, 93 S.Ct. 1241; AT & T Info. Systems, Inc. v. General Services Admin., 810 F.2d 1233, 1236 (D.C.Cir.1987).

C. Disclosure.
In a reverse FOIA case, the party seeking to prevent the government from disclosing information it is willing to disclose bears the burden to justify nondisclosure. Pacific Architects, 906 F.2d at 1347. The congressional policy underlying FOIA attempts to guarantee public access to most government documents in order "to ensure an informed citizenry." FBI v. Abramson, 456 U.S. at 621, 102 S.Ct. 2054. FOIA is to be construed broadly and in favor of disclosure, and its exemptions are correspondingly given a narrow construction. Department of the Air Force v. Rose, 425 U.S. 352, 361-62, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Information in the government's possession is presumptively disclosable unless it is clearly exempt. NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 220-21, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).
As previously stated, TRIFID contends the unit price information at issue is excluded from disclosure by exemption four of FOIA, 5 U.S.C. § 552(b)(4), which exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential", and by the Trade Secrets Act, 18 U.S.C. § 1905, which criminalizes the unauthorized disclosure of, among other things, "trade secrets" or "confidential statistical data."[9]
Two significant decisions of the United States Court of Appeals for the District of Columbia Circuit establish different legal tests governing exemption four cases. See Critical Mass, 975 F.2d 871, and National Parks and Conservation Ass'n v. Morton, 498 F.2d 765 (D.C.Cir.1974) ("National Parks"). The manner in which government acquired the information at issue determines which test to apply. Bartholdi Cable Co., Inc. v. FCC, 114 F.3d 274, 281 (D.C.Cir.1997); Martin Marietta Corp. v. Dalton, 974 F.Supp. 37, 38 (D.D.C.1997).
Under National Parks, if a party was legally required to submit commercial or financial information to the government, then in response to a FOIA request, the government must treat the information as "confidential" for the purposes of exemption four, and should not disclose it if disclosure would be likely to (i) impair the government's ability to obtain such information in the future, or (ii) cause substantial harm to the competitive position of the submitting party. National Parks, 498 F.2d at 770.
The National Parks test was modified in Critical Mass. Under the latter decision, when a party voluntarily submits financial or commercial information to the government, the information is "confidential" within the meaning of FOIA exemption four and should not be disclosed if the information "would customarily not be released to the public by the person from whom it was obtained." Critical Mass, 975 F.2d at 878 (citation omitted).
TRIFID contends that the Critical Mass test controls the application of exemption four in this case, because it voluntarily decided to pursue the NIMA contract and submitted the confidential information at issue in connection with its bid proposal. TRIFID argues that under Critical Mass, the bright line between "voluntary" and "required" submissions *1098 is whether the government has the power to seek or levy sanctions against a party for failing to comply with information requests. TRIFID cites, inter alia, McDonnell Douglas v. EEOC, 922 F.Supp. 235.
NIMA contends that the National Parks test is applicable, because submission of unit price information was required in order to be considered for the contract. NIMA asserts that a party's voluntary participation in an activity, such as seeking a government contract, does not determine whether any submission of information made in connection with the activity is voluntary. Rather, NIMA argues the relevant inquiry is whether the unit price information provided by TRIFID was required to be submitted before NIMA would award the contract.
Financial and commercial information contained in government contracts is uniformly held to be "required" in the context of FOIA exemption four analysis. Therefore, the National Parks test is applied in this type of case. See McDonnell Douglas Corp. v. National Aeronautics & Space Admin., 981 F.Supp. 12, 15 (D.D.C.1997); Martin Marietta Corp. v. Dalton, 974 F.Supp. 37, 39 (D.D.C.1997) (unit price and other information submitted by a party to obtain a government contract was "required"); McDonnell Douglas Corp. v. National Aeronautics & Space Admin., 895 F.Supp. 319, 326 (D.D.C.1995) (pricing information submitted in response to NASA's RFP in a competitive bidding situation was "required" and mandatory; its omission would result in the disqualification of the bidder from the competition), vacated as moot, 88 F.3d 1278 (D.C.Cir.1996) (Table); see also Chemical Waste Mgmt., Inc. v. O'Leary, No. 94-2230, 1995 WL 115894, *8 (D.D.C. Feb.28, 1995); Lykes Bros., 1993 WL 786964, at *7; cf. Public Citizen Health Research Group v. FDA, 964 F.Supp. 413, 414 n. 1 (D.D.C.1997) (protocol for patient post-marketing study of drug was required to be submitted within National Parks context where it had to be submitted in order to obtain FDA approval for a drug).
If TRIFID had not submitted unit price data in its bid proposal, it would not have been considered for the DMA contract. Section A of the RFP states, "Replies must set forth full, accurate and complete information as required by this solicitation (including attachments)." Once TRIFID decided to submit its proposal, it "had no choice but to submit the unit price information" because the information was required by the RFP. See Chemical Waste, 1995 WL 115894, at *8.
The Court finds persuasive the reasoning of the cases which conclude that commercial and financial information required to be submitted in response to government RFPs, and made part of government contracts, is "required" under FOIA exemption four analysis. As Judge Lamberth of the District of Columbia district court cogently stated, to accept a "voluntariness" argument such as that advanced by TRIFID "would result in classifying all government contractors as per se volunteers whose pricing information could easily be withheld from the public domain. Such a result would conflict with FOIA's primary purpose of promoting public access to information in the government's possession." McDonnell Douglas, 895 F.Supp. at 325 (citing 5 U.S.C. § 552(a)). Thus, the Court concludes the National Parks test is properly applied in this case.[10]
The Court must now determine the main issue, whether NIMA correctly applied the National Parks test to the facts of this case. As stated above, under National Parks, FOIA exemption four protects "required" financial or commercial information only if disclosure is likely to (i) impair the government's ability to obtain such information in the future, or (ii) cause substantial harm to the competitive position of the party submitting the information. National Parks, 498 F.2d at 770.
The unit price information at issue here is clearly "commercial or financial" in nature. There is no contention the government will be impaired in its ability to obtain this type of information in the future. The only issue *1099 is whether release of the unit price information will cause substantial competitive harm to TRIFID.
In opposing the release of unit price information, TRIFID submitted the affidavit of Nancy Riddle, its Director of Administration. The Riddle affidavit (i) stated that unit price information is a "closely guarded secret at TRIFID" and detailed the steps TRIFID has taken to restrict access to unit price information, which it considers "proprietary"; and (ii) made the conclusory assertion that disclosure of TRIFID's unit price information to its competitors would put TRIFID at a competitive disadvantage and cause it substantial harm, by giving competitors insight into its profit margins, pricing and bidding strategy, and could allow competitors to formulate future bids designed to undercut TRIFID's prices. TRIFID also submitted the DeGroot letter of its counsel, which reiterated that unit price information is a closely guarded secret within TRIFID and that access to the information would give competitors insight in TRIFID's cost structure and profit margin. Counsel also argued that the Critical Mass test should apply to the exemption four analysis, as the unit price information was confidential and was voluntarily provided to the government.
Both the Riddle affidavit and DeGroot letter consist of conclusory and generalized assertions of substantial competitive harm, which are insufficient to sustain the burden of nondisclosure under the FOIA. See Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1291 (D.C.Cir.1983); McDonnell Douglas, 981 F.Supp. at 16 (affirming NASA determination that contractor failed to "provide the required level of detail evidencing substantial competitive harm"); McDonnell Douglas, 895 F.Supp. at 326 (conclusory affidavit that competitor would be able to underbid contractor if pricing information was disclosed failed to explain how a competitor might deduce information that would cause substantial competitive harm); see also Lykes Bros., 1993 WL 786964, at *6 (noting that plaintiffs in a reverse-FOIA action "are required to make assertions with some level of detail as to the likelihood and the specific nature of the competitive harm they predict.")
As described above, TRIFID's objections to disclosure mainly detailed measures it took to guard and protect its pricing information. This information is simply not relevant to the National Parks analysis. The Riddle affidavit and DeGroot letter contain only generalized allegations relating to competitive harm, which do not contain "any level of detail" or serve to establish the likelihood of the competitive harm they assert. Nowhere in the administrative record did TRIFID offer any concrete or detailed explanation as to how a competitor might utilize unit price information in a manner which was likely to result in substantial competitive harm.
Based on the entire administrative record before it, the Court concludes that NIMA reviewed the relevant factors, and its decision to release unit price information from the DMA contract does not represent a "clear error of judgment." Citizens to Preserve Overton Park, 401 U.S. at 416, 91 S.Ct. 814.
In a final effort to prevent the information from being released, TRIFID argues for the first time before this Court that it will suffer substantial competitive harm because the DMA contract contemplates option years and may be rebid. TRIFID states that "[b]ecause the work on any rebid would essentially be the same as TRIFID is performing, disclosure of TRIFID's unit pricing ... would give its competitors a distinct advantage during any rebid process." (Pl.'s Mot. Summ. J. at 2.) TRIFID cites several decisions for the proposition that under exemption four, disclosure of unit prices is improper where a contract may be rebid for the same services.
As a threshold matter, plaintiff did not raise this argument with NIMA in its objections to disclosure, although it could have done so. Therefore, the Court declines to consider TRIFID's rebidding argument because it is outside the scope of the administrative record. See Arp v. Railroad Retirement Bd., 850 F.2d 466, 467 (8th Cir.1988) (rejecting review of a procedural due process claim which was not previously presented to the administrative agency).
*1100 In the alternative, the Court finds TRIFID's rebidding argument unpersuasive, as the cases it cites are factually and legally distinguishable from the present situation. Plaintiff relies primarily on Chemical Waste, 1995 WL 115894, in which the court recognized the possibility that substantial competitive harm could occur where unperformed work is rebid, and remanded the case for further factfinding on the issue of competitive harm. In Chemical Waste, the plaintiff was a subcontractor which objected to the release of its unit prices to a competitor under a FOIA request. The plaintiff's prime contractor did not require the services that the plaintiff had agreed to supply during the period of the subcontract, because the contracting government agency had not performed the environmental cleanup it had intended to complete during the first subcontract period. Thus, when the subcontract was rebid, the prime contractor was essentially rebidding the same agreement.
The Chemical Waste decision is limited to the "somewhat unique situation" of rebidding a contract for unperformed work, and does not apply where a competitor might "reverse engineer" confidential profit information. See CC Distributors, Inc. v. Kinzinger, No. 94-1330(NHJ), 1995 WL 405445, *5 (D.D.C. June 28, 1995). While similar work may be rebid in the present case, there is no contention any rebidding will consist of unperformed work, and therefore Chemical Waste is inapposite. Further, Chemical Waste holds only that substantial competitive harm may result upon a rebidding, not that such harm is presumed. See 1995 WL 115894, at *6. Finally, it was significant to the court in Chemical Waste that the subcontractor plaintiff was not in privity of contract with the government, and therefore disclosure of its prices should not be considered as a "cost of doing business" with the government. Id. at *5. As TRIFID did contract with the government, this consideration does not apply.
The other decisions cited by plaintiff, Landfair v. United States Dept. of Army, 645 F.Supp. 325 (D.D.C.1986), and Timken Co. v. United States Customs Service, 531 F.Supp. 194 (D.D.C.1981), are also distinguishable. First, neither decision was a reverse FOIA action. More importantly, in both Landfair and Timken the information at issue was submitted under assurances of confidentiality, and the courts concluded release of the information would impair the government's ability to obtain similar information in the future. See Landfair, 645 F.Supp. at 328; Timken, 531 F.Supp. at 198. In contrast, in the present case there is no assertion that the government's ability to obtain similar information will be impaired.[11]
For these reasons, the possibility that future option years of the contract may be rebid does not alter the Court's conclusion that NIMA's decision to release unit price information from the DMA contract does not represent a clear error of judgment.

V. Conclusion.

Following review of the entire administrative record before it, the Court concludes that NIMA's decision to release plaintiff's unit price information in response to a FOIA request was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Plaintiff's motion for summary judgment should therefore be denied and its complaint for injunctive relief dismissed, and defendant's motion for summary judgment should be granted. The Court's order restraining defendant from disclosing unit price information will be vacated.
Accordingly,
IT IS HEREBY ORDERED that order of October 24, 1997 restraining defendant from disclosing unit price information from DMA Contract No. DMA402-96-R-003 is vacated. [Doc. 8]
IT IS FURTHER ORDERED that plaintiff TRIFID Corporation's motion for summary judgment is DENIED. [Doc. 12]
*1101 IT IS FURTHER ORDERED that defendant National Imagery and Mapping Agency's motion for summary judgment is GRANTED. [Doc. 13]
An appropriate judgment shall accompany this memorandum and order.

JUDGMENT
In accordance with the memorandum and order of this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment is entered in favor of defendant National Imagery and Mapping Agency and against plaintiff TRIFID Corporation, and plaintiff's complaint is DISMISSED.
Costs are assessed against plaintiff.
NOTES
[1] NIMA has exercised the first-year option with TRIFID.
[2] 975 F.2d 871 (D.C.Cir.1992) (en banc), cert. denied, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993).
[3] Exec. Order No. 12600, 52 Fed.Reg. 23,781 (1987), 1997 WL 181359.
[4] DOD regulations provide that NIMA may choose to seek additional information, as follows: "When a substantial issue has been raised [concerning objections to a records release], [NIMA] may seek additional information from the source of the information and afford the source and requester reasonable opportunities to present their arguments on the legal and substantive issues involved prior to making an agency determination." 32 C.F.R. § 286.23(h)(1).
[5] A court may consider additional evidence and testimony from an agency which elaborates on or helps explain the agency decision. Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); AT & T Info. Systems v. General Services Admin., 810 F.2d 1233, 1236 (D.C.Cir.1987). In this case, the Court concludes the administrative record itself adequately explains the reasons for the agency's decision, and the declarations merely provide further explanation of the record.
[6] Defendant did not provide citation to authority for its contention that 32 C.F.R. § 293.6(c) has been superseded, or provide a current copy of the regulation to the Court. The Court's independent review of 32 C.F.R. § 293.6 (current through June 16, 1998, 63 Fed.Reg. 32,955), does not support defendant's contention. While deference is to be given to an agency's interpretation of its own rules, see City of St. Louis v. Department of Transp., 936 F.2d 1528, 1534 n. 1 (8th Cir.1991), the agency must adequately inform the Court what the applicable rules are.
[7] Compare Lykes Bros., 1993 WL 786964, *3 (refusing to apply to a decision to disclose records a regulation requiring a General Counsel's concurrence not to disclose a record).
[8] A party may introduce evidence outside the administrative record relevant to the preliminary question of the propriety of de novo review. Acumenics Research & Technology v. United States Dept. of Justice, 843 F.2d 800, 805 n. 5 (4th Cir.1988).
[9] The scope of the Trade Secrets Act is coextensive with exemption four of FOIA. Pacific Architects & Engineers, Inc. v. United States Dept. of State, 906 F.2d 1345, 1347 (9th Cir.1990); Acumenics Research & Technology v. United States Dept. of Justice, 843 F.2d 800, 806-07 (4th Cir. 1988); CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1151 (D.C.Cir.1987), cert. denied, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988). Therefore, if information is exempt from disclosure under exemption four, the Trade Secrets Act also bars an agency decision to release it. Acumenics, 843 F.2d at 807.
[10] The Court's decision in McDonnell Douglas Corp. v. United States EEOC, 922 F.Supp. 235 (E.D.Mo.1996), cited by plaintiff, does not require a different result. The McDonnell Douglas case is readily distinguishable from the present case because it did not concern disclosure of information required to be submitted in connection with bidding on a government contract.
[11] Because the Court finds that plaintiff's rebidding argument is without merit, it does not address defendant's responsive argument: that plaintiff's unit prices will not be useful to competitors on rebidding, because conditions of contract performance have changed significantly as a result of implementation of the Defense Reform Initiative and downsizing at NIMA. (See Def.'s Resp. to Pl.'s Mot. Summ. J. at 6-8.) These contentions, like plaintiff's rebidding argument, are clearly outside the scope of the administrative record.